**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Alex James Dawson, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 19 CV 50058 |
| v. | ) | |
| | ) | Magistrate Judge Lisa A. Jensen |
| John Baldwin, Illinois Department of | ) | |
| Corrections, John Varga, Sonja Nicholas, | ) | |
| Justin Wilks, Amber Allen, Rebecca | ) | |
| Thielen, Kristina Mershon, Nicholas | ) | |
| Hammer, Devon Rosga, Kandace Denning, | ) | |
| Unknown Employees of Illinois Department | ) | |
| of Corrections, | ) | |
| | ) | |
| *Defendants.* | ) | |

## REPORT AND RECOMMENDATION

For the following reasons, it is this Court's Report and Recommendation that Defendants' affirmative defense of failure to exhaust administrative remedies be denied. Any objection to this Report and Recommendation must be filed by August 13, 2021. Failure to object may constitute a waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-61 (7th Cir. 1989).

## I. BACKGROUND

Plaintiff Alex Dawson, while an inmate at Dixon Correctional Center ("Dixon"), filed a *pro se* civil rights action in March 2019 pursuant to 42 U.S.C. § 1983. Dkt. 1. The district court appointed counsel for Plaintiff, Dkt. 12, and the first amended complaint was filed in August 2019, Dkt. 24. Defendants filed motions to dismiss in October and November 2019. Dkts. 51, 55, 62. Plaintiff filed the second amended complaint (hereinafter "the complaint") in December 2019. Dkt. 66. The complaint names ten individuals, the Illinois Department of Corrections ("IDOC"), and Unknown Employees of IDOC as defendants. Pl.'s Compl. at 1-3, Dkt. 66. This report and recommendation addresses a failure to exhaust defense asserted by three of the individual Defendants – Nicholas Hammer, Devon Rosga, and Rebecca Thielen. Accordingly, the Court will include only the relevant information from the complaint with respect to those three individuals.

The complaint alleges that Plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act of 1990 ("ADA"). *Id*. at 4. He asserts that, while confined at Dixon, he made requests for reasonable accommodations for his disability in the form of wheelchair accessible showers, appropriate showerheads, and appropriate shower chairs, but was not given such accommodations. *Id*. at 4-5. He also alleges that the shower he was forced to

use had a malfunctioning light. *Id*. at 5. Plaintiff alleges that on December 6, 2017, he became disoriented by the malfunctioning light and a plastic chair slipped out from beneath him, causing him to fall and resulting in injuries. *Id*. He alleges he was left in the shower for nearly five minutes before Defendants Rosga and Hammer came to assist him. *Id*. Plaintiff alleges he was examined in his cell the same day, but no medical interventions were made for Plaintiff's injuries. *Id*. He continued to report pain over the following days but was not given an x-ray until December 14, 2017 – eight days after his fall. *Id*. He alleges that he continued to report pain related to the fall until his release in March 2019. *Id*.

Plaintiff makes one claim against Defendants Hammer and Rosga: deliberate indifference to serious medical need. Plaintiff asserts that Defendants heard him call for assistance but left him in the shower for nearly five minutes before they came to assist him and took him directly to his cell. He alleges that these Defendants were aware that his injuries needed immediate attention and that he was experiencing pain and suffering, but that they contributed to and condoned a delay in and failure to provide proper medical treatment. *Id*. at 13-15.

Plaintiff makes a separate deliberate indifference claim against Defendant Thielen, the Director of Nursing at Dixon. Plaintiff asserts that Defendant Thielen was consulted in relation to one of the grievances he filed.[1] He alleges that she was aware that his injuries required immediate attention and that he was experiencing pain and suffering, but that she contributed to and condoned a delay in and failure to provide proper medical treatment. *Id*. at 15-16.

Defendants asserted the affirmative defense of failure to exhaust administrative remedies and completed limited discovery relating to that issue. On July 20, 2021, this Court conducted an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

## II. LEGAL STANDARD

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust available administrative remedies before filing a federal lawsuit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Pavey*, 544 F.3d at 740; *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). To exhaust administrative remedies, an inmate must proceed through all steps of the institution's grievance process that are available to him. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). That means the inmate must grieve his complaint "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). The PLRA does not, however, set forth the procedures an inmate must take to exhaust administrative remedies at a particular institution; rather, the procedures are established by each institution. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). The Seventh Circuit requires strict compliance with the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). An inmate "who does not properly take each step within the administrative process has failed to exhaust [administrative] remedies, and thus is foreclosed by § 1997e(a) from litigating." *Pozo*, 286 F.3d at 1024.

---

[1] The aforementioned grievance will be referred to as the 12-14-17 Grievance. It is described in more detail below.

Failure to exhaust administrative remedies is an affirmative defense. *Jones*, 549 U.S. at 216. The burden, therefore, is on the defendant to prove by a preponderance of the evidence that an administrative remedy was available to the plaintiff and that the plaintiff failed to exhaust that remedy. *Jones v. Dart*, No. 14 C 1929, 2016 WL 1555588, at *2 (N.D. Ill. Apr. 18, 2016) (collecting cases).

State law determines the administrative remedies that a state prisoner is required to exhaust. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) (citing *King v. McCarthy*, 781 F.3d 889, 894 (7th Cir. 2016). The grievance procedures for the IDOC are set forth in the Illinois Administrative Code. Ill. Admin. Code tit. 20, § 504.800, *et seq*. An inmate must first submit a grievance to his counselor. 20 Ill. Admin. Code § 504.810(a). If the inmate is not satisfied with the counselor's resolution, he must then file a formal grievance with his grievance officer. *Id.* A grievance must be filed with the counselor or grievance officer within 60 days after the discovery of the incident that gives rise to the grievance. *Id.* The grievance officer shall consider the grievance and report his findings and recommendations in writing to the Chief Administrative Officer. *Id.* § 504.830(e). The Chief Administrative Officer ("CAO") shall review the findings and recommendation and advise the offender of the decision in writing. *Id.* If, after the CAO responds, the inmate still believes that the grievance has not been resolved to his satisfaction, he may appeal in writing to the IDOC Director. *Id.* § 504.850(a). The Administrative Review Board ("ARB"), appointed by the Director, must receive the appeal within 30 days after the date of the CAO's decision. *Id.* The ARB shall then submit a written report of its findings and recommendations to the Director, who shall review them and make a final determination of the grievance. *Id.* at § 504.850(d)-(e). An inmate does not exhaust his administrative remedies until the ARB rules upon his appeal. *See id.* § 504.850.

### III. DISCUSSION

The allegations of a failure to exhaust administrative remedies with respect to Defendants Rosga, Hammer, and Thielen were addressed during the *Pavey* hearing. Both parties introduced exhibits and called witnesses.

***Pavey* Exhibits**

The parties introduced a total of 12 exhibits into evidence – including 10 individual documents introduced by Plaintiff and two group exhibits introduced by Defendants – but some of the documents submitted by the parties were the same. The Court will only provide a description of certain exhibits because not all of those that were introduced are relevant to the Court's analysis.

#### i. 12-6-17 Grievance

Both parties presented a grievance dated December 6, 2017 into evidence. Dkts. 124-5, p.5-6; 130.[2] For the sake of clarity, this will hereinafter be referred to as the "12-6-17 Grievance." Plaintiff identified the nature of the grievance on the grievance form as staff conduct, ADA disability accommodation, and medical treatment. In the summary section of the grievance,

---

[2] Although this grievance is dated December 6, 2017 at the top of the form, it should be noted that it is dated December 15, 2017 next to the inmate signature line.

Plaintiff wrote that the chair in the shower was not ADA accessible because it lacked rubber stops on the feet and was made of slick plastic, making it slippery and unstable. He asserted that, because the shower hose was also not ADA accessible, he had to stand in the shower to wash his body. He explained that the light in the ADA shower was strobing on and off, which was disorienting, so he tried to sit down but the chair shot out from under him. He wrote that he hit the "filthy floor" elbow first and his shoulder and lower back made cracking sounds. Plaintiff wrote: "I was in shock could not get up, yelled for help for 5 min. C/O Rosga came to the rescue / C/O Hammer 12-6-17 3 to 11 shift made full report." Plaintiff wrote that "[a]ll staff failed to act reasonably, failed to provide reasonable safety, acted with negligence/reckless disregard/deliberate-indifference [sic] of my personal safety." At the end, Plaintiff wrote that the health care unit ("HCU") waited until eight days after his fall before giving him an x-ray. In the counselor response section of the grievance, on January 29, 2018, the counselor responded: "Per HCU NS Thielen" Plaintiff had been seen and treated per protocol.

Each of the parties presented into evidence the Response to Offender's Grievance form relating to the 12-6-17 Grievance. Dkts. 124-5, p.10; 132. The grievance officer noted that the nature of the grievance was relating to an ADA shower light. The grievance officer received Plaintiff's appeal on February 8, 2018, and responded on March 8, 2018:

> Housing conditions are inspected by Administrative, Maintenance and Security staff . . . All repairs are an administrative decision . . . and not a matter of offender preference. This Grievance Officer notes a work order has been processed to address the lighting issue and medical concerns were addressed in Grievance #18-2-47.

The grievance officer recommended no further action because he was reasonably satisfied the grievance concerns were being addressed. The Chief Administrative Officer concurred and signed to that effect on March 9, 2018.

The parties both presented the ARB's response to the 12-6-17 Grievance into evidence. Dkts. 124-5 p.8; 133. The ARB noted that Plaintiff's appeal was received on April 4, 2018, and on April 24, 2018 the ARB denied Plaintiff's grievance on the basis that "the issue was appropriately addressed by the facility Administration." A note at the bottom stated: "cannot substantiate a strobing shower light caused fall. Medical addressed in grv 18-2-4."[3]

### ii. 12-14-17 Grievance

Plaintiff presented a grievance dated December 14, 2017 into evidence. Dkt. 136.[4] For the sake of clarity, this will hereinafter be referred to as the "12-14-17 Grievance." In the summary section of the grievance, Plaintiff wrote: "I'm in serious pain fell in shower 12-6-17 injured lower back r. shoulder/shoulder blade. They waited 8 days before doing x-ray. After the x-ray they told me there is no more we can do for you. I need a [sic] MRI." He also provided a "list of everyone liable" on the back of the form, naming individuals such as wardens and doctors. Several

---

[3] This grievance number appears to refer to the 12-14-17 Grievance.
[4] Although this grievance is dated December 14, 2017 at the top of the form, it should be noted that it is dated December 15, 2017 next to the inmate signature line.

Defendants were listed, but none of those at issue in this opinion. In the counselor response section of the grievance, on January 26, 2018, the counselor wrote:

> Per HCU NS Thielen, offender was seen and addressed by Nurse on 12/16/17. Offender seen by NP on 12/13/17 (x-ray) & 12/20/2017, both times offender reported shoulder "getting better" and offender does not indicate MRI at that time. Offender needs to sign up for sick call if having issues again.

Both parties presented into evidence the Response to Offender's Grievance form relating to the 12-14-17 Grievance. Dkts. 124-5 p.7; 137. The grievance officer noted that the nature of the grievance was medical. The grievance officer received Plaintiff's appeal on February 8, 2018 and responded on March 13, 2018: "[A]ll treatment must be ordered by the Facility's Medical Director and not a matter of inmate preference. This Grievance Officer has no authority to evaluate clinical decisions made by a licensed physician." He also restated the information from the counselor's response. The grievance officer recommended no further action because he was reasonably satisfied that Plaintiff had access to medical care. The Chief Administrative Officer concurred and signed to that effect on March 13, 2018.

Plaintiff presented the ARB's response to the 12-14-17 Grievance into evidence. Dkt. 138. The ARB noted that Plaintiff's appeal was received on April 4, 2018, and on April 26, 2018 the ARB denied Plaintiff's grievance on the basis that "the issue was appropriately addressed by the facility Administration." A note at the bottom stated: "Follow nurse sick call procedures."

### *Pavey* Hearing Testimony

Defense counsel called three witnesses, including Plaintiff, at the *Pavey* hearing. Defendants' first witness was Sherry Benton. She testified that she is currently employed by the IDOC as an ARB chairman, and she was in this role during the time at issue. When asked about the 12-6-17 Grievance, Ms. Benton testified that the grievance had been fully exhausted "as it relates to the specifics on [that] form." With respect to the references to Defendants Rosga and Hammer, Ms. Benton testified that being named in the grievance did not make them subjects of the grievance. She explained that Plaintiff did not specify what they did or did not do that violated his rights; he only provided general information about them. Ms. Benton stated that this did not satisfy Department Rule 504.810.[5]

When asked why the grievance counselor would consult with Defendant Thielen, Ms. Benton responded that, since the grievance related to a medical issue, the grievance counselor asked the HCU nurse supervisor to provide a response. Ms. Benton testified that, to her understanding, Defendant Thielen was not an individual involved in the grievance nor were her actions being grieved, but she was simply being consulted by the counselor.

Defendant's second witness was James Martens. Mr. Martens testified that he was employed at Dixon as a grievance officer during the time at issue. He testified that, as part of his

---

[5] The rule states: "The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." Ill. Admin. Code tit. 20, § 504.810(c).

job reviewing the grievances, there were several people he might contact depending on what the grievance issue was. He explained that for a health care related issue, he would contact the health care administrator ("HCA"). After reviewing the grievances, Mr. Martens testified that it appeared Defendant Thielen was either the acting HCA or was appointed to respond for the HCA. He explained that Defendant Thielen would have been consulted because the "Medical Treatment" box was checked on the grievance, so Mr. Martens reached out to her for a response to make sure Plaintiff had access to health care.

When Mr. Martens was questioned about the grievance officer's report he filled out in response to the 12-14-17 Grievance, he testified that he did not indicate in his response that the grievance lacked specificity. He stated that there was enough information provided in the grievance for him to be able to do an investigation and prepare a report and recommendation for the warden. He testified that an inmate is not required to specifically identify any person but should provide as much information as possible. He stated that if there was not much specificity regarding an individual, it was possible that the inmate had limited information regarding that individual at the time he filled out the grievance.

Defense counsel and Plaintiff's counsel called Plaintiff to testify as part of their respective cases-in-chief. Plaintiff testified that he properly grieved and exhausted all administrative remedies. He stated that no one had ever told him he needed to file anything else or that his grievances were not specific enough.

Plaintiff testified that he specifically mentioned Defendants Rosga and Hammer in the 12-6-17 Grievance. When asked to read what the grievance said pertaining to Defendant Rosga, Plaintiff replied, "That he came into the shower, to the rescue." When asked to read what pertained to Defendant Hammer, Plaintiff stated, "That he was on the 3 to 11 shift at that moment." Plaintiff clarified that his grievance indicated both Defendants Rosga and Hammer made a full report of the incident.

Plaintiff testified that the medical staff at Dixon, including nurses, would cover up their name tags so as to avoid being identified by inmates. He explained that they would tuck their name tag in the top of their shirt so that it was hanging inside their shirt and not visible. Plaintiff stated that Defendant Thielen concealed her identity from him in this way, and he was not able to find out her name until he filed a Freedom of Information Act request. Plaintiff testified that he did not name Defendant Thielen in either of the grievances, and he did not mention in either grievance about anyone concealing their identity. When asked by defense counsel when he saw Defendant Thielen, Plaintiff testified that he believed Defendant Thielen was the nurse who came to do the examination after his fall. When asked where he discussed the nurse that examined him after the fall, Plaintiff pointed to the 12-14-17 Grievance. He explained that the nurse had the authority to bring him to have an x-ray the day of the fall.

**Exhaustion as to Defendants Rosga and Hammer**

Plaintiff asserts that he exhausted his administrative remedies with respect to Defendants Rosga and Hammer in the 12-6-17 Grievance. Defendants argue that Plaintiff did not adequately

identify Officers Rosga and Hammer in such a way that would put them on notice that they could be the subject of a lawsuit but, instead, cast them in a favorable light.

The Seventh Circuit has held that the purpose of a prisoner's grievance is to provide "prison officials a fair opportunity to address his complaint." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). Grievances are not meant to provide notice to officials who might later be sued, but to alert the prison to a problem. *See id.* (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)); *see also Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) ("[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought."). Here as drafted, the grievance alerted the prison to the fact that Plaintiff fell in the shower and yelled for help for five minutes before assistance arrived. Plaintiff identified the two individuals he knew were on shift at the time of his fall – Defendant Rosga, who ultimately came to his rescue, and Officer Hammer, who wrote the occurrence report.

With regard to Defendants' contention that the grievance in fact portrayed them in a positive light, Defendants appear to be focusing solely on the statements that Defendant Rosga "came to the rescue" and "c/o Hammer 12-6-17 3 to 11 shift made full report." However, when these statements are read in context with the rest of the grievance, the statements were sufficient to alert the prison that Plaintiff was complaining about Defendants' delayed response to his calls for help. The Court finds the analysis in *Mays v. Illinois Dep't of Corr.*, No. 16-CV-1307-SMY-RJD, 2018 WL 2431408 (S.D. Ill. May 30, 2018) to be persuasive. In *Mays*, the plaintiff alleged that an officer, Officer Evans, verbally harassed and physically assaulted him. In his grievance, the plaintiff wrote about the conduct of Officer Evans, but also stated that another officer, Officer Olson, "who was standing right there the whole time pulls Evans off me, then walks away." *Id.* at 3. Despite the fact that the description of Officer Olson's actions referred to some helpful conduct ("pulls Evans off me"), the court found that the grievance put the prison on notice of the plaintiff's claim that Officer Olson was present and failed to intervene earlier in the attack. *Id.* Therefore, the plaintiff had adequately exhausted his administrative remedies. *Id.*

Similar to the grievance in *Mays*, the language in the 12-6-17 Grievance describing the Defendants' conduct referred to some neutral or arguably helpful conduct. However, like the *Mays* court, this Court finds that the statements concerning Defendants Rosga and Hammer were sufficient to put the IDOC on notice of Plaintiff's deliberate indifference claim. Plaintiff's grievance emphasized that, after he hit the floor, he was in shock and could not get up, so he yelled for help for five minutes before receiving help – the implication being that he should have received help sooner. He identified Defendants Rosga and Hammer as being present (on shift) at the time of the fall. Additionally, Plaintiff wrote that "[a]ll staff failed to act reasonably, failed to provide reasonable safety, acted with negligence/reckless disregard/deliberate-indifference [sic] of my personal safety." Plaintiff names over ten individuals in the 12-6-17 Grievance, including Defendants Rosga and Hammer, so this sentence indicates that Plaintiff sought to hold everyone he named in the grievance liable for this incident. Therefore, the Court concludes that Plaintiff's 12-6-17 Grievance provided sufficient information to exhaust administrative remedies with respect to Defendants Rosga and Hammer.

**Exhaustion as to Defendant Thielen**

7

Plaintiff asserts that he exhausted his administrative remedies with respect to Defendant Thielen in the 12-14-17 Grievance. Defendant Thielen argues that Plaintiff did not name her in the grievance, nor did he identify her in a way that would indicate that she was one of the individuals about whom he was grieving. She contends that she was only consulted by the grievance counselor so that he could collect facts to allow him to respond to the grievance. Plaintiff contends that Defendants had the opportunity to indicate whether something was lacking in his grievance, but they did not; the grievance was decided on the merits at all levels. Plaintiff also points to the Illinois Administrative Code, which states that an offender is not precluded from filing a grievance when he does not know the name of an individual. 20 Ill. Admin. Code § 504.810(c).

When a prisoner files a grievance, that prisoner must include "factual details," including "the name of each person who is the subject of or who is otherwise involved in the complaint." 20 Ill. Admin. Code § 504.810(c). But that does not mean that prisoners are required to know who is allegedly at fault. "This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." *Id.* Other than that sentence, the IDOC grievance process is silent regarding what happens when the inmate is not necessarily complaining about a specific person or when the inmate has no idea who is responsible for the problem.

In *Daval v. Zahtz*, No. 3:19-CV-50147, 2021 WL 2072127 (N.D. Ill. May 24, 2021), the court addressed a situation where a plaintiff grieves about an issue but does not identify all those who were responsible. In *Daval*, the plaintiff's grievance complained that, despite urgent referrals to see an ophthalmologist for his worsening vision condition, no such examination had happened, and he specifically requested to see such a specialist. *Id.* at 4. Other than naming the prison's eye doctor who had referred him to the specialist, the plaintiff did not specify who he was complaining about. *Id.* Despite not naming names, the grievance counselor consulted the HCA and responded that the plaintiff had been seen multiple times and was being treated for the issue. *Id.* The defendants, including the HCA argued that the plaintiff failed to exhaust because he did not name them in his grievance. *Id.* The plaintiff responded that he did not know who was responsible for the delays, so he had no way to describe or name them. *Id.* The plaintiff also asserted that the defendants knew who he was talking about because they consulted with the individuals allegedly responsible for the delay. *Id.*

The court in *Daval* found that the plaintiff had exhausted his administrative remedies with respect to all defendants, including the HCA. *Id.* at 5. The court explained that the plaintiff was not aware of who was responsible for the delays in sending him to the eye specialist, and he could not be "expected to know the identities of those officials actually responsible" for those decisions. *Id.*; *see Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010). The court also noted that no prison official ever informed the plaintiff that he needed to provide more detail, nor did they need him to do so. *Daval*, 2021 WL 2072127, at *5. The prison officials knew who to speak with in order to address the plaintiff's grievance and did so without the need for further information. *Id.*; *see Maddox*, 655 F.3d at 713; *see also Perez v. Fenoglio*, No. 3:11-CV-819-NJR-DGW, 2016 WL 11464676 (S.D. Ill. July 20, 2016), *report and recommendation adopted*, No. 11-CV-819-NJR-DGW, 2016 WL 4501124, at *7 (S.D. Ill. Aug. 29, 2016) ("Although [the plaintiff] did not name or describe the physical characteristics of [the defendant], such circumstance is not fatal to the issue of exhaustion . . . [T]he Court finds that [the plaintiff]'s grievances were sufficient to alert

8

prison officials about [the issue] . . . The prison was certainly in a better position than Plaintiff to determine who was responsible.").

The Court finds that Plaintiff exhausted his administrative remedies with respect to Defendant Thielen. Like the plaintiff in *Daval*, Plaintiff specifically requested adequate medical attention with respect to his injuries after his fall. Plaintiff testified that he did not know Defendant Thielen's name at the time he wrote the grievance. But it is evident from the "list of everyone liable" Plaintiff provides on the back of his grievance (which includes the names of various wardens and the HCA) that he was attempting to include the names of all those he knew who might be responsible for his inadequate medical care. Plaintiff could not be expected know all of the identities of those actually responsible. Thus, the grievance put the prison on notice that Plaintiff was grieving about inadequate medical care after his fall by including all those who he believed were responsible for that inadequate care. Despite not identifying Defendant Thielen by name, the grievance counselor knew of her involvement in as much as he consulted with her about Plaintiff's medical care. After consulting with Defendant Thielen, the grievance counselor was able to respond to Plaintiff's grievance on the merits.

Defendant Thielen argues that the grievance officer only consulted with her to gather facts in order to respond to the grievance and not because she was personally involved in his care. But Plaintiff's grievance complained about all those who were responsible for his failure to receive adequate medical care, even including the Director and the Warden. Thus, it is clear he sought to lodge his grievance against all those who were responsible for ensuring that he received adequate care, not just those who were personally required to treat him. If Defendant believes that she in fact had no role in his care directly or in an oversight capacity she is free to present those facts in this litigation. However, at this stage the Court is confident that Defendant was on notice that Plaintiff was complaining about his failure to receive adequate medical care for injuries he suffered in the fall, including all those who were responsible for that failure. Plaintiff has exhausted his administrative remedies with respect to Defendant Thielen.

## IV. CONCLUSION

For the foregoing reasons, this Court enters a Report and Recommendation finding that Defendants have not met their burden in showing that Plaintiff failed to exhaust his administrative remedies with respect to Defendants Rosga, Hammer, and Thielen.


Date: July 30, 2021                    By:    _Lisa A. Q_____

                                              Lisa A. Jensen
                                              United States Magistrate Judge